UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ANTHONY J. SINENI, III, ESQ.,    )
    )
    Plaintiff,    )
    )
        v.    )    No. 2:16-cv-000520-JAW
    )
CUMBERLAND COUNTY    )
SHERIFF'S OFFICE    )

## ORDER ON MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT

Because the plaintiff in this civil rights claim failed to create a genuine issue of material fact as to whether a sheriff's office violated his civil rights as a matter of its policy and custom, the Court grants the sheriff's office's motion for summary judgment. The Court also denies the plaintiff's request to dismiss his complaint without prejudice instead of granting the motion for summary judgment.

## I.    BACKGROUND

On September 27, 2016, Anthony J. Sineni, III, filed a complaint in Cumberland County Superior Court against the Cumberland County Sheriff's Office (the Sheriff's Office), alleging that the Sheriff's Office engaged in malicious prosecution when it illegally obtained a search and arrest warrant against Mr. Sineni, falsely imprisoned him, and violated his civil rights. *State Court Record* Attach. 1 *Compl.* at 1-7 (ECF No. 3). The Sheriff's Office removed the complaint to this Court on October 12, 2016. *Notice of Removal* (ECF No. 1).

On September 1, 2017, the Sheriff's Office filed a motion for summary judgment together with a statement of undisputed material facts. *Def.'s Mot. for*

*Summ. J.* (ECF No. 55) (*Def.'s Mot.*); *Def.'s Statement of Material Facts in Support of Mot. for Summ. J.* (ECF No. 56) (DSMF).  On October 10, 2017, Mr. Sineni filed his opposition to the motion for summary judgment and in the alternative, he moved for a voluntary dismissal without prejudice; he also filed a response to the Sheriff's Office's statement of facts and posited additional facts.  *Pl. Anthony J. Sineni's Opp'n to Def.'s Mot. for Summ. J. or in the Alternative Mot. for Voluntary Dismissal Without Prejudice* (ECF No. 60) (*Pl.'s Opp'n*) (*Pl.'s Mot. to Dismiss*); Attach 5 *Pl.'s Statement of Material Facts in Support of Opp'n to Def.'s Mot. for Summ. J.* at 1-5 (PRDSMF); Attach 5 *Pl.'s Additional Facts* at 5-11 (PSAMF).  On October 24, 2017, the Sheriff's Office filed a reply to Mr. Sineni's motion for summary judgment with a response to Mr. Sineni's statement of additional material facts as well as an objection to Mr. Sineni's motion to dismiss.  *Reply in Support of Def.'s Mot. for Summ. J.* at 1-7 (*Def.'s Reply*); *Obj. to Mot. to Dismiss* at 7-8 (*Def.'s Opp'n to Mot. to Dismiss*) (ECF No. 64); *Resp. to Pl.'s Statement of Facts* (DRPSAMF) (ECF No. 65).[1]

## II.  LEGAL STANDARD

A court may grant summary judgment under Federal Rule of Civil Procedure 56 if the record demonstrates that "there is no genuine dispute as to any material fact

---

[1]    In this case, the typical chronological sequence of statement of facts, response, statement of additional facts, and response was disrupted by the Sheriff's Office's failure to provide a supporting citation for nine of its statements of material fact.  DSMF ¶¶ 1-6, 13-15.  After Mr. Sineni objected, the Sheriff's Office provided the appropriate citations in his reply to Mr. Sineni's additional facts.  DRPSAFM at 1-2.  However, as Mr. Sineni had not had an opportunity to respond to the Sheriff's Office's properly cited statements of fact, the Court issued an order on April 23, 2018, allowing Mr. Sineni to respond to the Sheriff's Office's supplemental statements.  *Interim Order on Mot. for Summ. J.* (ECF No. 66).  Mr. Sineni did not respond to the Court's April 23, 2018 order and therefore he waived the right to object or qualify his responses to those statements of fact.  The Court treated the Defendants' statements of fact for paragraphs one through six and thirteen through fifteen as supported by the documents referenced in the Defendants' October 24, 2017 reply.

and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A 'material' fact is a 'contested fact [that] has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant,' and a 'genuine issue' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.'" *McCarthy v. City of Newburyport*, 252 F. App'x 328, 332 (1st Cir. 2007) (quoting *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93-94 (1st Cir. 2001)) (internal quotation marks and citation omitted).

The Court must examine the record evidence "in the light most favorable to [the nonmovant], and [must draw] all reasonable inferences in . . . favor [of the nonmoving party]." *Foley v. Town of Randolf*, 598 F.3d 1, 5 (1st Cir. 2010). At the same time, courts ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Cortés-Rivera v. Dep't of Corr. & Rehab.*, 626 F.3d 21, 26 (1st Cir. 2010) (quoting *Sullivan v. City of Springfield*, 561 F.3d 7, 24 (1st Cir. 2009)).

## III. STATEMENT OF FACTS[2]

### A. Anthony J. Sineni, III

Anthony J. Sineni, III has been self-employed as an attorney practicing predominately in the Portland area and Southern Maine for twenty-six years. PSAMF ¶ 1; DRPSAMF ¶ 1. During his practice, Mr. Sineni has specialized in criminal defense law and as a result has gained detailed, specific knowledge about

---

[2]     In accordance with "conventional summary judgment praxis," the Court recounts the facts in the light most favorable to Mr. Sineni's theory of the case consistent with record support. *Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 17 (1st Cir. 2002). In compliance with this obligation, the Court recites certain events as facts even though the Sheriff's Office disputes them.

law enforcement practices including practices by the Sheriff's Department pertaining to all criminal matters, which include domestic violence crimes. PSAMF ¶ 2; DRPSAMF ¶ 2.

**B.      The Cumberland County Sheriff's Office**

Kevin Joyce has been the Sheriff of Cumberland County since January 2011. DSMF ¶ 1; PRDSMF ¶ 1. As Sheriff of Cumberland County, Sheriff Joyce has final decision-making authority with respect to all policy and operational matters at the Cumberland County Sheriff's Office. DSMF ¶ 2; PRDSMF ¶ 2. At no time has Sheriff Joyce ever been aware of occasions where Cumberland County officers have falsified reports for the purpose of obtaining arrest or search warrants. DSMF ¶ 3; PRDSMF ¶ 3. Sheriff Joyce is not aware of any occasions when Cumberland County officers provided misleading statements in support of arrest or search warrants. DSMF ¶ 4; PRDSMF ¶ 4. Sheriff Joyce is not aware of any occasions when Cumberland County officers have intentionally or knowingly omitted relevant information from applications in support of arrest or search warrants. DSMF ¶ 5; PRDSMF ¶ 5. Sheriff Joyce is not aware of any occasions, including any complaints, claims, or allegations, that Cumberland County officers have unlawfully interfered with a parent's right to the care and custody of his or her children. DSMF ¶ 6; PRDSMF ¶ 6.

## C.     Cumberland County Arrests Anthony J. Sineni, III

On September 26, 2014,[3] the Cumberland County Sheriff's Office arrested Mr. Sineni for Assault, Tampering with a Witness, and Receiving/Possessing Stolen Property. PSAMF ¶¶ 3-4; DRPSAMF ¶¶ 3-4. The arrest was a result of a combined effort by Sheriff's Department Detectives and the mother of Mr. Sineni's children, Winona Hichborn.[4] PSAMF ¶ 5; DRPSAMF ¶ 5.[5]

Specifically, Detective John Fournier of the Sheriff's Office presented information in the affidavit in support of the arrest warrant that predominately relied

---

[3]     The parties disagree about the date the Cumberland County Sheriff's Office arrested Mr. Sineni. In paragraph three of his statement of material facts, Mr. Sineni says he was arrested on September 26, 2014. PSAMF ¶ 3. Paragraph three is supported by Mr. Sineni's affidavit. PSAMF Attach. 3, *Aff. of Anthony J. Sineni, III, Esq.* ¶ 4. The Sheriff's Office denied Plaintiff's paragraph three and affirmatively pointed to an affidavit sworn to by Detective John Fournier and Mr. Sineni's own deposition transcript. DRPSAMF ¶ 4 (citing *Fournier Aff.*; *Dep. of Anthony Sineni*). The Fournier affidavit establishes the date the arrest warrant was sought, not the date it was executed. Mr. Sineni's February 2, 2017 deposition transcript contradicts his October 10, 2017 affidavit as to the date of his arrest. As the Court is required to view the facts in the light most favorable to Mr. Sineni, it has used September 26, 2017 as the date of his arrest.

Furthermore, from reviewing other evidence in this case, the Sheriff's Office submitted documentary evidence of the bail motion and the Court's granting of bail. DRPSAMF Attach. 3 at 1-2. These documents confirm that Mr. Sineni was bailed on September 26, 2014 so it appears he must have been arrested on September 26, 2014, not on September 27, 2014 as the Sheriff's Office alleged.

[4]     The Sheriff's Office moved to strike Plaintiff's paragraphs 5, 11-16, 18, 23, 25, 31, 34-36, 39, 43, and 44 on the ground that they are not material. DRPSAMF at 3, n. 2. The Court denies The Sheriff Office's motion.

The Sheriff's Office also denied Plaintiff's paragraph five citing the deposition of Detective Fournier at p. 203, on which Detective Fournier said that everything he did was equally to protect Mr. Sineni and Ms. Hichborn. DRPSAMF ¶ 5. The Court includes the statement because there is no genuine dispute that Ms. Hichborn's efforts were a factor leading to the arrest, but the Court draws no further inferences regarding the detectives' motives from the specific phrasing of Plaintiff's paragraph five.

[5]     In paragraph six of his statement of material facts, Mr. Sineni states, "Cumberland County Sheriff Department Detectives violated Department policy and made reckless and or fraudulent statements in support of an arrest affidavit which was presented to District Court Judge for approval." PSAMF ¶ 6. The Sheriff's Office objected to paragraph six on the ground that it contains inappropriate legal and factual conclusions and is non-specific. DRPSAMF ¶ 6; DRPSAMF at 3, n.2. The Court agrees with the Sheriff's Office that this paragraph is too general and conclusory to be included in the statement of facts. The Sheriff's Office also objected to paragraphs 30, 32, 36, and 45 on the same basis. The Court overrules the objections regarding paragraphs 30, 32, and 36, but agrees with the Sheriff's Office on paragraph 45, which the Court addresses in footnote 20.

on false statements made by Winona Hichborn, knowing that Ms. Hichborn was documented in several sheriff reports to be unreliable, unstable and always intoxicated when encountering the sheriffs, whether she called the Sheriff's Office to respond or whether they had responded based on other reports as to Ms. Hichborn's drunken behavior.[6] PSAMF ¶ 7; DRPSAFM ¶ 7. Detective Fournier was familiar with several recent domestic violence/disturbance reports in which Winona and Anthony (Tony) Sineni were involved.[7] PSAMF ¶ 8; DRPSAMF ¶ 8. Detective Fournier failed to inform the Judge in his arrest warrant affidavit or by any means of his knowledge that Ms. Hichborn is unreliable and has in the past been removed

---

[6]      The Sheriff's Office denied Plaintiff's paragraph seven, referring to Detective Fournier's deposition. DRPSAMF ¶ 7. As Mr. Sineni states in his affidavit that he has personally read The Sheriff Office reports, the contradiction between Detective Fournier's affidavit and Mr. Sineni's affidavit must be resolved in favor of the nonmovant.

      The Sheriff's Office also moved to strike paragraph 7, 13, 14, and 45 on the ground that they are inadmissible hearsay. DRPSAMF at 3, n.2. Paragraphs 7, 13, and 14 are admissible because, to the extent that the contents of the documents qualify as assertions, they are not offered for the truth of the matter asserted. Regarding the police reports discussed in paragraph 7, the truth of any specific claim about what Ms. Hichborn actually said is irrelevant to this lawsuit. What matters is the existence of the police reports, and the implication that detectives were aware of credibility issues not disclosed in the warrant application. Similarly, the statements in the tape recording discussed in paragraph 13 and 14 are not offered for the truth of the matter asserted. For the issues before the Court, it is irrelevant whether, on a prior occasion, Detective Potvin was actually "sticking [her] neck[ ] out" for declining to arrest Ms. Hitchborn. It does not matter if Detective Potvin's statement is actually true or false. The statement is offered for other reasons, such as what it says about Detective Potvin's motives or the effect on the listeners.

      The Court addresses paragraph 45 separately, in footnote 15.

[7]      In paragraph nine of his statement of material facts, Mr. Sineni states, "Knowing this information, Fournier admits in his affidavit that he was familiar with these reports." PSAMF ¶ 8. The Sheriff's Office interposed a qualified response, indicating that Detective Fournier stated in the affidavit that he was familiar with several domestic violence/disturbance reports in which Ms. Hichborn and Mr. Sineni were involved, but the Sheriff's Office points out that there is no evidence that these reports stated that Ms. Hichborn was unreliable, unstable and always intoxicated. DRPSAMF ¶ 8. The problem with the Sheriff's Office's qualified response is that the factual predicate for this evidence is set forth in paragraph seven, and the Sheriff's Office did not object to the contents of paragraph seven on the ground that the sheriff reports do not reveal such information, only that Detective Fournier recalled things differently. Because the Court was required to view contested evidence in the light most favorable to Mr. Sineni, the Court included the predicate paragraph and now includes this corollary.

from the household due to violent behavior while intoxicated.[8]   PSAMF ¶ 9;

DRPSAMF ¶ 9.

In paragraph five of his affidavit in support of Mr. Sineni's arrest, Detective

Fournier included statements that Ms. Hichborn told him about what her then-

thirteen-year-old son had told her that Mr. Sineni had said to the son about the

presence of firearms in their basement; Mr. Sineni believes that the statements by

Ms. Hichborn's son were false and that Detective Fournier recklessly relied upon

them as true in including them in his affidavit in support of the arrest warrant.[9]

PSAMF ¶ 10; DRPSAMF ¶ 10.   Detective Fournier failed to inform the Judge that

Ms. Hichborn was physically removed from the household in March of 2014 due to

domestic violence.[10]   PSAMF ¶ 11; DRPSAMF ¶ 11.   Detective Fournier failed to

---

[8]       The Sheriff's Office denied paragraph nine, which originally read, "Founier failed to inform the Judge in his affidavit or by any means of his personal knowledge that Hichborn is unreliable, an alcoholic, and has in the past been removed from the household due to violent behavior while intoxicated." PSAMF ¶ 9. The Sheriff's Office pointed out that Detective Fournier did in fact inform the Judge that Ms. Hichborn was an alcoholic. DRPSAMF ¶ 9 (citing *Fournier Aff.* ¶ 24). In Detective Fournier's affidavit in support of arrest, paragraph twenty-four states: "Winona has also told me that she is an alcoholic, and since last summer has had difficulty staying sober." The Court has therefore eliminated the reference to Ms. Hichborn being an alcoholic from Plaintiff's paragraph nine, since it is inaccurate.
           The Sheriff's Office has also objected on the ground that Detective Fournier did not believe that Ms. Hichborn was unreliable and had been removed from the household. DRPSAMF ¶ 9. As the predicate for this statement appears to be Mr. Sineni's knowledge of what is contained in the Sheriff's Office's incident reports, the Court will include these contested portions of paragraph nine under its obligation to view the facts in the light most favorable to the nonmovant.
[9]       The Sheriff's Office denied Plaintiff's paragraph ten, which alleges that Detective Fournier recklessly included statements that Ms. Hichborn's son had supposedly told her about the guns in their basement. DRPSAMF ¶ 10. The Court modified Mr. Sineni's paragraph ten, because there is no evidence in this record as to whether Ms. Hichborn's son's statements about what Mr. Sineni told him about the firearms is true or false. The Court included Mr. Sineni's belief that those statements were false.
[10]      The Sheriff's Office interposed a qualified response to Plaintiff's paragraph eleven. DRPSAMF ¶ 11. The Sheriff's Office admits that Detective Fournier did not place this information in the affidavit. *Id.* However, it states that Detective Fournier understood that the March 2014 incident involved a disturbance between Mr. Sineni and Ms. Hichborn and Ms. Hichborn stated that she could stay with friends. *Id.* As there is a conflict between Mr. Sineni and the Sheriff's Office, the Court has viewed the conflicting evidence in the light most favorable to Mr. Sineni and has included the paragraph.

inform the Judge that Ms. Hichborn was found at the residence on several occasions in July and August of 2014 in violation of an existing restraining order. PSAMF ¶ 12; DRPSAMF ¶ 12.

Mr. Sineni has personally reviewed a tape recording made by Detective Jill Potvin where she is conversing with Ms. Hichborn at Mr. Sineni's residence during which Detective Potvin tells Ms. Hichborn that "[w]e are sticking our necks out" for not arresting her for being in violation of the protection order that was in place. PSAMF ¶ 13; DRPSAMF ¶ 13. In the tape, Mr. Sineni heard Detective Potvin continue to coach Ms. Hichborn with an agenda that consisted of the use of false and unethical statements to promote an agenda to color Ms. Hichborn as a victim and not a perpetrator of criminal activity. PSAMF ¶ 14; DRPSAMF ¶ 14.

Prior to Mr. Sineni's arrest in September 2014, Ms. Hichborn informed Mr. Sineni that with the help of Detective Fournier and Detective Potvin, a plan had been formulated to arrest him so that Ms. Hichborn could take possession of his house and belongings, regain custody of his children, and be provided with financial support. PSAMF ¶ 15; DRPSAMF ¶ 15. At that time, Ms. Hichborn had been evicted from her apartment and Mr. Sineni had been awarded sole parental rights over their two children and his stepson who was Ms. Hichborn's biological child. PSAMF ¶ 16; DRPSAMF ¶ 16.

In his affidavit in support of Mr. Sineni's arrest, Detective Fournier referred to statements of Amer[11] Radhi about allegedly stolen firearms. PSAMF ¶ 17;

---

[11] Mr. Rahdi's first name is variously spelled Amir and Amer. The Court used Amer but does not know which is correct.

DRPSAMF ¶ 17. However, Detective Fournier failed to inform the Judge that Mr. Rahdi was also a known unreliable witness and that Mr. Rahdi himself had a prior conviction for possession of a firearm by a prohibited person.[12] *Id.* Detective Fournier failed to inform the Judge that both Mr. Rahdi and Ms. Hichborn had continued access to the residence where the guns were stolen and the location where the guns were found. PSAMF ¶ 18; DRPSAMF ¶ 18. Detective Fournier failed to inform the Judge that Amer Radhi gave false and misleading statements, and specifically failed to indicate that Mr. Radhi and Ms. Hichborn were both alternative suspects in the case.[13] PSAMF ¶ 19; DRPSAMF ¶ 19.

Mr. Sineni had advised Mark Rankin, the owner of the firearms, to make the report to the police that his guns had been stolen. PSAMF ¶ 39; DRPSAMF ¶ 39. Detective Fournier interviewed Mark Rankin and failed to inform the Judge that Mr. Rankin stated that even if Mr. Sineni had possession of the guns, it would have been authorized with Mr. Rankin's consent.[14] PSAMF ¶¶ 20, 40; DRPSAMF ¶¶ 20, 40.

---

[12] The Sheriff's Office interposed a qualified response to this paragraph on the ground that Detective Fournier did not think that Mr. Rahdi was an unreliable witness. DRPSAMF ¶ 17. The Court has included the statement because, regardless whether Detective Fournier thought Mr. Rahdi was unreliable, it remains true that he did not include the statement in the affidavit in support of the arrest warrant.

Regarding the statement that Detective Fournier did not inform the Judge that Mr. Rahdi had a prior conviction, the Court notes that the Sheriff's Office did not object, but Detective Fournier's affidavit contains a number of references to Mr. Rahdi's statements to law enforcement that he was a felon and was not supposed to be around firearms. The Court included the statement because it is also true that Detective Fournier did not include in the affidavit the fact that Mr. Rahdi had a prior conviction for possession of a firearm by a prohibited person.

[13] The Sheriff's Office interposed a qualified response, indicating that although it admitted Detective Fournier did not include this information in his affidavit in support of the arrest warrant, he did include two different statements from Mr. Rahdi in the affidavit and he thought Mr. Radhi was a reliable witness. DRPSAMF ¶ 19. The Court does not view the Sheriff's Office's qualified response as material to Plaintiff's paragraph nineteen and the Court has included the paragraph.

[14] The Sheriff's Office interposed qualified responses to both paragraphs 20 and 40 (which are substantially identical), indicating that although Detective Fournier did not put this exact statement

Mr. Sineni is personally aware of other situations where Detectives from the Sheriff's Office have recklessly and/or intentionally omitted highly probative information from arrest and search warrants to effectuate their own agendas.[15] PSAMF ¶ 33; DRPSAMF ¶ 33.

### D. Events at Cumberland County Jail after the Sineni Arrest

Once arrested, Mr. Sineni was transported to and held at the Cumberland County Jail intake. PSAMF ¶ 21; DRPSAMF ¶ 21. Mr. Sineni was asked by personnel to take two phone calls from Detective Jill Potvin. PSAMF ¶ 22; DRPSAMF ¶ 22. Detective Potvin was requesting that Mr. Sineni give her information as to the whereabouts of his stepson. PSAMF ¶ 23; DRPSAMF ¶ 23. Soon after the phone call with Detective Potvin, Mr. Sineni was informed by the Deputies that both the bail commissioner and the person posting his bail were at the jail to coordinate his release. PSAMF ¶ 24; DRPSAMF ¶ 24. At that time, Mr. Sineni saw one of the intake personnel, Jason Hendrickson, on the phone, and Mr. Hendrickson brought the phone over to the desk and asked Mr. Sineni to speak with Detective Potvin. PSAMF ¶ 25; DRPSAMF ¶ 25. Detective Potvin asked Mr. Sineni to get the phone number for the

---

in the affidavit, he informed the Judge that Mr. Rankin did not want to pursue criminal charges and that Detective Fournier believed that this statement was adequate. DRPSAMF ¶¶ 20, 40.

    The Court does not accept The Sheriff Office's qualified responses. It is one thing for the owner of allegedly stolen firearms to say to law enforcement that the firearms were not stolen because the suspect had his permission to possess them. It is quite another for the owner of allegedly stolen firearms to say to law enforcement that even though the suspect stole the firearms, he did not wish to press charges. In the context of an affidavit for an arrest warrant for receiving or possessing stolen property, the fact that the owner told law enforcement that he had given the suspect permission to possess the supposedly stolen property is undoubtedly relevant to whether the warrant for that alleged crime should issue.

[15] The Sheriff's Office denied this paragraph, citing generally its motion for summary judgment. DRPSAMF ¶ 33. The Court declines to accept such a general denial. At the same time, Mr. Sineni's statement is non-specific and is not especially probative of anything.

family friends that his son was with and told the Deputy to retrieve the phone. *Id.*

Mr. Sineni cooperated and gave Detective Potvin the number. *Id.*

When the phone call ended, Deputy Hendrickson informed Mr. Sineni and several other Deputies that Detective Potvin had instructed them to turn the bail commissioner away so that Mr. Sineni could not be bailed out at that time.[16] PSAMF ¶¶ 26, 42; DRPSAMF ¶¶ 26, 42. This was confirmed through a phone call to the individual who was at the jail with the cash bail and who had shown and counted out

---

[16] The Sheriff's Office denied these paragraphs (which are substantially the same), citing Detective Potvin's deposition. DRPSAMF ¶¶ 26, 42. However, as there is a factual conflict between Mr. Sineni and Detective Potvin as to what transpired, the Court is obligated to view the facts in the light most favorable to the nonmovant and it accepts Mr. Sineni's version.

The Sheriff's Office also objected on hearsay grounds. DRPSAMF at 3 n.2; *see also supra* footnote 5. There is no double hearsay problem because Detective Potvin's statement is not hearsay. It was a command, not an assertion. An imperative statement cannot be true or false. *Baines v. Walgreen Co.*, 863 F.3d 656, 662 (7th Cir. 2017) ("In other words, [hearsay] statements assert propositions that may be true or false. They are distinct from other forms of communication, such as questions or commands"); *United States v. Rodriguez-Lopez*, 565 F.3d 312, 314 (6th Cir. 2009) ("[I]f the statements were questions or commands, they could not . . . be offered for their truth because they would not be assertive speech at all. They would not assert a proposition that could be true or false"); *see also United States v. Murphy*, 193 F.3d 1, 5 (1st Cir. 1999) (pointing out that questions are non-hearsay, because they are not assertions). The key statement, then, is Officer Hendrickson's. Unlike several of the other hearsay objections, this statement is hearsay. Mr. Sineni seeks to introduce the statement of an out-of-court declarant—Officer Hendrickson—to prove the truth of the matter asserted in the statement—that Detective Potvin just instructed him to turn away the bail commissioner.

Officer Hendrickson's statement, however, falls within an exception to the hearsay prohibition for present sense impressions. *See* FED. R. EVID. 803(1). "Under this exception, a statement is not hearsay if it describes or explains an event and is made either while the declarant is perceiving the event or immediately thereafter. . . ." *Davila v. Corporacion De Puerto Rico Para La Difusion Publica*, 498 F.3d 9, 18 (1st Cir. 2007). "[T]he underlying theory of this exception is that the substantial contemporaneity of the event and statement negates the possibility of deliberate or conscious misrepresentation by the declarant." *United States v. McElroy*, 587 F.3d 73, 85 (1st Cir. 2009).

Here, paragraph twenty-six indicates that Deputy Hendrickson relayed or described what he had just heard right after hanging up the phone. Regarding the time-limit between the declarant's perception and the assertion, there is no "bright-line test" and "no pat answers," rather "the character of the transaction or event will largely determine the significance of the time factor." *United States v. Shoup*, 476 F.3d 38, 43 (1st Cir. 2007). Based on the Court's impression of the brief delay and on very limited information in this record, the Court concludes that the statement is admissible for purposes of summary judgment.

Finally, even if inadmissible for the truth of the Detective Potvin statement, as Detective Potvin denied making it, the Hendrickson statement would likely be admissible to impeach Detective Potvin's denial. FED. R. EVID. 607.

the cash to verify the amount before the bail commissioner left.[17]  PSAMF ¶ 27; DRPSAMF ¶ 27.  Mr. Sineni was then held at the Cumberland County Jail for six to eight hours.  PSAMF ¶¶ 28, 41; DRPSAMF ¶¶ 28, 41.  Mr. Sineni is personally aware of many criminal cases where the Cumberland County Jail administration illegally held inmates who were due to be released.[18]  PSAMF ¶ 32; DRPSAMF ¶ 32.

### E.  Anthony Sineni's "No Contact" Bail Condition

The Sheriff's Office requested bail conditions that included a provision that Mr. Sineni could have no contact with his three children.[19]  PSAMF ¶ 29; DRPSAMF ¶ 29.  The basis for the no contact request was fraudulent statements that were uncorroborated and uninvestigated by any detective or deputy from the Sheriff's Office.[20]  PSAMF ¶ 30; DRPSAMF ¶ 30.  Mr. Sineni is personally aware of many face-to-face encounters that both Detective Fournier and Detective Potvin had with Ms. Hichborn where she was intoxicated and irrational.  PSAMF ¶ 31; DRPSAMF ¶ 31.

---

[17]    The Sheriff's Office interposed a qualified response to this paragraph, stating that the phone call confirmed that the bail commissioner was there and left but not that Detective Potvin instructed them to turn the bail commissioner away.  DRPSAMF ¶ 27.  Perhaps so.  But the statement is consistent with Mr. Sineni's contention about the sequence of events and the Court included it because it is required to view contested facts in the light most favorable to Mr. Sineni.

[18]    The Sheriff's Office denied this paragraph, citing generally its motion for summary judgment.  DRPSAMF ¶ 32.  The Court declines to accept such a general denial.  At the same time, Mr. Sineni's statement is non-specific and is not especially probative of anything.

[19]    The parties dispute whether the Sheriff's Office requested the no contact provision for Mr. Sineni's bail.  The Sheriff's Office points to a bail motion filed by an assistant attorney general on September 26, 2014.  DRPSAMF Attach. 3 at 1-2.  Mr. Sineni refers to his own affidavit and a bail commissioner information form.  PSAMF Ex, C at 17-19.  Even if an assistant attorney general moved for the no contact condition, this does not clarify whether the Sheriff's Office asked him to do so.  Based on this record, there is a conflict as to whether the Sheriff's Office made the request and as the Court is required to view contested facts in the light most favorable to Mr. Sineni, the Court has included his version of the events in the statement of facts.

[20]    The Sheriff's Office denied this paragraph.  DRPSAMF ¶ 30.  It cites the deposition of Detective Fournier.  *Id.* (citing *Fournier Dep.* at 203).  The Court reviewed page 203 of Detective Fournier's deposition and found no reference to the Sheriff's Office's investigation of the events that led to the no contract bail provision.  The Court accepted Mr. Sineni's version.

During the course of the criminal proceedings, bail was modified to allow Mr. Sineni to have contact with his children.  PSAMF ¶ 37; DRPSAMF ¶ 37.

### F.    The Victim's Advocates and Detective Jill Potvin

Detective Jill Potvin has an office in the Cumberland County District Attorney's Office in a separate physical portion of the District Attorney's Office and Detective Potvin regularly conducts official Sheriff's Office business out of that office.  PSAMF ¶ 34; DRPSAMF ¶ 34.  Detective Potvin's office is down the hall from the Domestic Violence Victims' Advocates office.  PSAMF ¶ 43; DRPSAMF ¶ 43.  Due to the close proximity of open doors, Detective Potvin has access to the Cumberland County District Attorney's Office's Victims' Advocates and potentially privileged information.  *Id.*  Detective Potvin is the sister of Kevin Joyce, the Sheriff of Cumberland County.  PSAMF ¶ 35; DRPSAMF ¶ 35.  One of the Domestic Violence Victims' Advocates, Jill Merrick, has discussions with Detective Potvin on a daily basis.  PSAMF ¶ 44; DRPSAMF ¶ 44.[21]  The Victim's Advocates in the Cumberland County District Attorney's Office promote personal agendas when aiding in the prosecution of domestic violence crimes.  PSAMF ¶ 36; DRPSAMF ¶ 36.  This agenda includes unfounded attempts to leverage defendants by creating no contact provisions of bail with their children.  *Id.*

---

[21]    Mr. Sineni included the following statement of fact under paragraph forty-five: "Detective Potvin interfered with Plaintiff's Constitutional right to care and custody of his children."  PSAMF ¶ 45.  The Sheriff's Office denied this statement, citing its motion for summary judgment.  DRPSAMF ¶ 45.  The Court agrees with the Sheriff's Office that this statement of fact is a proposition of law and the Court has not included it.

## G.    The Sheriff's Office's Policies

The Sheriff's Office has a set of standard operating procedures which are the official policies and procedures of the Sheriff's Office and are available for staff to review on the computer.  DSMF ¶ 13; PRDSMF ¶ 13.  The Sheriff's Office's Standard Operating Procedure 2-28 is the official policy and procedure of the Sheriff's Office regarding search warrants and was in effect on the date of the incidents in this lawsuit.  DSMF ¶ 14; PRDSMF ¶ 14.  The Sheriff's Office Standard Operating Procedure A-9 is the official policy and procedure of the Sheriff's Office regarding Code of Conduct and was in effect on the date of the incidents in this lawsuit.  DSMF ¶ 15; PRDSMF ¶ 15.

## H.    The Criminal Charges

The charges contained in the complaint that led to Mr. Sineni's arrest on September 26, 2014 were dismissed in January 2015.[22]  DSMF ¶ 7; PRDSMF ¶ 7; PSAMF ¶ 38; DRPSAMF ¶ 38.

---

[22]    The record about the criminal charges is incomplete.  The Sheriff's Office admitted that Mr. Sineni was arrested for Assault, Tampering with a Witness, and Receiving/Possessing Stolen Property.  PSAMF ¶ 4; DRPSAMF ¶ 4.  This is consistent with Detective Fournier's affidavit in support of the arrest warrant.  *Fournier Aff.* at 1 ("I, John Fournier being first duly sworn upon oath, state as follows . . . That I have probable cause to belief, and do believe that Anthony J. Sineni has committed the following offenses: Theft (by receiving) of Firearms, Tampering with a Witness, (4 counts) and Domestic Violence Assault").

The Sheriff's Office provided a copy of a Dismissal dated January 5, 2015, dismissing counts one through five of a criminal complaint because "Defendant has pled to other charges – Counts 6 and 7."  DRPSAMF, Attach. 2, *Dismissal* at 1.  The attached docket sheet reveals eight criminal counts were pending against Mr. Sineni.  Count One: Theft by Receiving Stolen Property; Counts Two, Three, and Five: Tampering with Witness, Count Four: Domestic Violence Assault; Count Six: Assault; and Counts Seven and Eight: Disorderly Conduct.  *Id. Unified Crim. Docket* at 4-6.  The assault charged in Count Six involved a man named Jeffrey Savages and took place on August 3, 2014 and the Disorderly Conduct charged in Count Seven involved Amer Radhi and occurred on September 19, 2014.  *Id. Information* at 2.

From what the Court can gather from these records, Mr. Sineni is correct that the charges that brought about the September 26, 2014 arrest were dismissed.  The Sheriff's Office is also correct that Mr. Sineni pleaded guilty to two other charges, which predate and postdate Mr. Sineni's September

## I.     The Cumberland County Sheriff's Office's Insurance Coverage and Notice of Claim

The Maine County Commissioners Association Self-Funded Risk Management Pool (Risk Pool) is a public, self-funded pool established pursuant to 30A M.R.S. ch. 117.[23] DSMF ¶ 8; PRDSMF ¶ 8. Cumberland County is a Named Member of the Risk Pool and is provided with insurance-type coverage pursuant to a document entitled "Maine County Commissioners Association Self-Funded Risk Management Pool Coverage Document." DSMF ¶ 9; PRDSMF ¶ 9. The Coverage Document specifically excludes any coverage for any cause of action seeking tort damages for which the County is immune pursuant to the Tort Claims Act, and limits coverage to those areas for which governmental immunity is expressly waived by the Tort Claims Act. DSMF ¶ 10; PRDSMF ¶ 10. Other than the insurance-type coverage provided to Cumberland County under the Risk Pool's Coverage Document, Cumberland County has not procured insurance against liability for any claim against the County or its employees for which immunity is not otherwise waived under the Maine Tort Claims Act. DSMF ¶ 11; PRDSMF ¶ 11. Cumberland County did not receive a Notice of Claim against the County or any County employees regarding the actions discussed in the Complaint dated September 27, 2016, until the County received a copy of the Complaint in September of 2016. DSMF ¶ 12; PRDSMF ¶ 12.

---

26, 2014 arrest. However, there is no indication in this record that the reason the charges were dismissed against Mr. Sineni was due to lack of evidence and the Court amended Plaintiff's paragraph 38 accordingly.

[23]     In his response to these and other insurance coverage issues, Mr. Sineni interposes a qualified response, indicating that the insurance coverage issues are not relevant because they involve state law claims, whereas he has filed federal civil rights claims. PRDSMF ¶¶ 8-12. The Court included these facts because they are not disputed as facts. The Court separately addresses the legal relevance of those facts.

## IV. THE MOTION FOR SUMMARY JUDGMENT

### A. The Sheriff's Office's Position

#### 1. The State Law Claims

The Sheriff's Office first addresses the two state law claims in Mr. Sineni's Complaint: Count I – malicious prosecution, and Count II – false imprisonment. *Def.'s Mot.* at 5. The Sheriff's Office says that these claims are governed by the Maine Tort Claims Act (MTCA), and the Sheriff's Office maintains that it is entitled to summary judgment on these claims because Mr. Sineni failed to comply with the notice requirement of the MTCA and in any event the Sheriff's Office is protected by immunity from both claims. *Id.* at 5-6.

Regarding the notice defense, the Sheriff's Office cites 14 M.R.S. § 8107 for the statutory requirement that a claimant under the MTCA must give written notice of the claim within 180 days of its accrual. *Id.* at 6. Citing *Cushman v. Tilton*, 652 A.2d 650, 651-52 (Me. 1995), the Sheriff's Office argues that Mr. Sineni's failure to comply with the notice provision bars his MTCA claims. *Id.*

Next, citing 14 M.R.S. § 8103(1), the Sheriff's Office contends that it is immune from the state tort claims. *Id.* at 6-8. Acknowledging that the MTCA provides for four exceptions to governmental immunity, the Sheriff's Office argues that Mr. Sineni's claims do not fall within any of the exceptions to statutory immunity. *Id.* at 7-8. Noting that it is insured through the Maine County Commissioners Association Self-Funded Risk Management Pool, the Sheriff's Office also maintains that it has not waived its immunity. *Id.* at 8-9.

### 2. The § 1983 Claim

The Sheriff's Office observes that it is the sole defendant in this case and that even though Mr. Sineni's Complaint alleges misconduct by Detective Jill Potvin, Mr. Sineni has not filed a claim against Detective Potvin. *Id.* at 10. To succeed on a § 1983 claim against a municipal entity, a claimant must, in the Sheriff's Office's view, allege an unconstitutional policy, custom or practice that caused him harm. *Id.* at 10-11. Here, the Sheriff's Office contends, there is no evidence of any unconstitutional policies, customs or practices at Cumberland County that cause Mr. Sineni to suffer a constitutional deprivation. *Id.* at 11-12.

### B. Anthony Sineni's Position

### 1. The Maine Tort Claims Act

Mr. Sineni disputes the applicability of the MTCA to either his malicious prosecution or false imprisonment counts. *Pl.'s Opp'n* at 8-16. Instead, he counters that these claims properly assert violations under 42 U.S.C. § 1983. *Id.* at 11 (malicious prosecution), 14-15 (false imprisonment). As such, neither claim, in his view, is subject to the MTCA notice requirement. *Id.* at 12, 15. Contrary to the Sheriff's Office's contention, Mr. Sineni maintains that the evidence demonstrates widespread and pervasive unconstitutional practices attributable to the Sheriff's Office sufficient to survive summary judgment. *Id.* at 12-13, 16.

### 2. The § 1983 Claim

Quoting *Troxel v. Granville*, 530 U.S. 57, 66 (2000), Mr. Sineni states that parental interest in the "care, custody and control of their children is . . . a fundamental liberty interest" protected by the Constitution. *Id.* at 17. Mr. Sineni

alleges that Detective Potvin interfered with his protected interest in his children by assisting in obtaining an arrest warrant against him and by participating in the imposition of a bail requirement that limited his contact with his children. *Id.* Mr. Sineni argues that the circumstantial evidence is sufficient to establish that the Victims' Advocates from the District Attorney's Office and Detective Potvin worked together to violate Mr. Sineni's constitutional right to raise his children. *Id.* at 17-18.

### C.     The Sheriff's Office's Reply

In its reply, the Sheriff's Office contends that Mr. Sineni is attempting to alter the allegations in counts one and two of his Complaint from tort claims under the MTCA to constitutional violations under 42 U.S.C. § 1983. *Def.'s Reply* at 1. The Sheriff's Office observes that Mr. Sineni never addressed its argument about the lack of the 180-day notice under the MTCA, and it argues that to the extent the counts state claims under the MTCA, summary judgment should be granted on both counts. *Id.* at 2.

The Sheriff's Office views Mr. Sineni's argument as a belated attempt to amend his Complaint and it objects to such an amendment. *Id.* at 2-4. It notes that, in contrast to count three, neither count one nor two mentions any violation of constitutional rights. *Id.* at 3. The Sheriff's Office also says that at the Local Rule 56(h) conference, "defense counsel stated that he believed Counts I and II asserted state law tort claims and the Plaintiff did not correct this statement." *Id.* at 3.

If counts one and two are deemed to state constitutional claims, the Sheriff's Office maintains that they should still be dismissed because Mr. Sineni failed to

establish that "he suffered constitutional violations as a result of unconstitutional policies or customs of this Defendant." *Id.* at 4. Regarding the malicious prosecution claim, the Sheriff's Office argues that Mr. Sineni failed to prove element two of a malicious prosecution claim: that the proceeding was terminated in favor of the accused. *Id.* at 5. The Sheriff's Office contends that a compromised resolution, such as the one in this case, cannot serve as the basis for a malicious prosecution claim. *Id.* at 5-6. As regards the false imprisonment claim, the Sheriff's Office points out that a false imprisonment claim may not succeed if the basis for the claim is an arrest pursuant to a warrant. *Id.* at 6. Further, it claims that Mr. Sineni failed to present any evidence of a custom or practice by the Sheriff's Office not to release inmates. *Id.* at 6-7. For the same reason, the Sheriff's Office asserts that it is entitled to summary judgment on Count III. *Id.* at 7.

## V.     THE MOTION TO DISMISS

### A.     Anthony Sineni's Position

On October 10, 2018, after the Sheriff's Office filed its motion for summary judgment, Mr. Sineni filed a motion for voluntary dismissal without prejudice with his response to the Sheriff's Office's motion for summary judgment. *Pl.'s Mot. to Dismiss* at 19. Mr. Sineni says that:

> [I]f the court takes the position that the defendant is correct on the [Maine Tort Claims Act] notice requirements issue, then due to laches and unreasonable delay which has prejudiced the Plaintiff, the case should be dismissed without prejudice, bearing in mind that we are still within the statute of limitations time period.

*Id.* Mr. Sineni notes that the Sheriff's Office failed to raise these issues in a motion to dismiss and instead required him to "incur[ ] burdensome and unnecessary costs

and [to] spen[d] copious amounts of time on discovery." *Id.* Mr. Sineni asserts that the Sheriff's Office had "no valid reason to wait until this far into the process to raise these claims." *Id.* Mr. Sineni states that if the case is dismissed against the Sheriff's Office, the Court should allow claims "against the individuals who allegedly should have been named in the Complaint." *Id.*

## B.     The Sheriff's Office's Reply

The Sheriff's Office objects to a without prejudice dismissal of the Complaint. *Def.'s Reply* at 8. The Sheriff's Office quotes *Doe v. Urohealth Systems*, 216 F.3d 157 (1st Cir. 2000) for the proposition that a court should assess a defendant's "effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and the fact that a motion for summary judgment has been filed by the defendant." *Id.* (quoting *Urohealth*, 216 F.3d at 160). The Sheriff's Office also quotes *Cabrera v. Esso Standard Oil Company Puerto Rico*, 723 F.3d 82 (1st Cir. 2013) to say that a court should not allow a plaintiff to force a defendant "to incur substantial costs in litigating an action, and then simply dismiss his own case and compel the defendant to litigate a wholly new proceeding." *Id.* (quoting *Cabrera*, 723 F.3d at 88). The Sheriff's Office argues that a plaintiff may not request a dismissal without prejudice only in the event that a court rules against him in a motion for summary judgment because it is "not a proper use of Rule 41." *Id.*

## VI. DISCUSSION

### A. The Rule 56 Conference

In response to the Sheriff's Office's claim that Mr. Sineni failed to correct defense counsel when he asserted that Counts One and Two were state law claims, the Court reviewed the transcript of the Rule 56(h) conference and disagrees with the Sheriff's Office's interpretation of the conference. At one point, defense counsel stated, "This is a three count complaint . . . and the first two counts are torts which I believe are governed by the Tort Claims Act. The only defendant is the County." *Local Rule 56(h) Conf.*, *Tr. of Proceedings* 13:7-12 (ECF No. 54). Defense counsel then made the point that no notice had been filed under the MTCA, and he asked Mr. Sineni whether he would be willing to dismiss the MTCA claims. *Id.* 13:14-14:2. Mr. Sineni replied:

> At this point I am not going to concede anything because I have made that mistake before and it has been misconstrued so. I am - - I would like the opportunity to see what the defendants say and then respond to it accordingly. If I decide at that point to capitulate to, you know, their argument, then it will be easy; but certainly I want to see what they have to say first.

*Id.* 14:3-9. Defense counsel pressed Mr. Sineni on the MTCA notice issue and Mr. Sineni replied, "Well, I am not so sure, but at any rate. . . . Because I mean civil rights are intertwined in the allegations contained in Counts 1 and 2 as well that are not just state torts so." *Id.* 14:20-25.

Based on this dialogue, the Court rejects the Sheriff's Office's contention that Mr. Sineni did not correct him when defense counsel asserted that Counts One and Two were solely state tort law claims. The record establishes that Mr. Sineni

informed defense counsel (and the Court) that he was pressing civil rights claims in Counts One and Two as well as the state tort law claims.

## B.    The State Law Claims

By the same token, Mr. Sineni stated at the Rule 56(h) conference that he was making state law claims in Counts One and Two. *Id.* ("Counts 1 and 2 . . . are not just state torts . . ."). On their face, both Counts One and Two could be construed as stating state tort law claims against the Sheriff's Office. *Compl.* at 3-5, Count 1, Malicious Prosecution, Count 2, False Imprisonment. Although in his response, Mr. Sineni could be seen as abandoning his state tort law claims, he does not clearly do so. *Pl.'s Opp'n* at 8-18. Mr. Sineni's response to the Sheriff's Office's statement number 12 concedes that he did not file a notice of claim with the Sheriff's Office within 180 days of the accrual of his state tort law claims in this case.[24] The Maine Supreme Judicial Court has made it clear that the failure to file a timely and sufficient notice of claim pursuant to 14 M.R.S. § 8107 with the governmental entity subject to suit "bars the claim." *Deschenes v. City of Sanford*, 2016 ME 56, ¶ 17, 137 A.3d 198 (quoting *Cushman v. Tilton*, 652 A.2d 650, 651 (Me. 1995)); *Mueller v. Penobscot Valley Hosp.*, 538 A.2d 294, 297 (Me. 1988). The Court concludes that the Sheriff's Office is entitled to summary judgment on Counts One and Two to the extent they assert state tort law claims against the Sheriff's Office.

---

[24]    The Sheriff's Office's statement number twelve reads, "Cumberland County did not receive a Notice of Claim against the County or any County employees regarding the actions discussed in the Complaint dated September 27, 2016, until the County received a copy of the Complaint in September of 2016." DSMF ¶ 12. Mr. Sineni responded, "Qualified. They did not receive a notice of claim, however, MTCA notice requirements do not apply to the three causes of action in this because they are federal civil rights claims brought under Section 1983." PRDSMF ¶ 12.

## C.    The § 1983 Claims

### 1.    The Viability of § 1983 Claims Based on State Torts

In *Harrington v. City of Nashua*, 610 F.3d 24 (1st Cir. 2010), the First Circuit discussed whether a "malicious prosecution [claim] can embody a Fourth Amendment violation and, thus, ground a cause of action under section 1983." *Id.* at 30.  The *Harrington* Court did not decide the issue.  *Id.* ("[W]e do not propose to resolve that uncertainty today").  But it proceeded on that assumption.  *Id.*  In 2012, the First Circuit discussed the issue in *Moreno-Medina v. Toledo*, 458 Fed. Appx. 4 (1st Cir. 2012).  Again the First Circuit "assume[d], without deciding, 'that malicious prosecution can embody a Fourth Amendment violation and, thus, ground a cause of action under section 1983.'"  *Id.* at 7 (quoting *Harrington*, 610 F.3d at 30).  But the First Circuit went a step further and set forth what a plaintiff in the First Circuit must prove to state a malicious prosecution claim under § 1983:

> In this circuit, a plaintiff seeking to bring a malicious prosecution claim under Section 1983 must do more than simply satisfy the elements of the common law tort of malicious prosecution.  The plaintiff must "show a deprivation of liberty, pursuant to legal process, that is consistent with the concept of a Fourth Amendment seizure."

*Id.* (quoting *Harrington*, 610 F.3d at 30) (internal citations omitted).

Based on the tea leaves from the First Circuit, this Court previously concluded that a plaintiff "may state a claim for malicious prosecution under § 1983."  *Filler v. Hancock Cnty.*, No. 1:15-cv-00049-JAW, 2016 U.S. Dist. LEXIS 10777, at *76 (D. Me. Jan. 27, 2016), *interlocutory appeal dismissed* 859 F.3d 148 (1st Cir. 2017)).  However, to state such a claim, the plaintiff must allege a "constitutional violation" that "lies in the 'deprivation of liberty accompanying the prosecution' rather than the

prosecution itself." *Id.* (quoting *Moreno-Medina v. Toledo*, 458 F. App'x 4, 7 (1st Cir. 2012) (quoting *Britton v. Maloney*, 196 F.3d 24, 29 (1st Cir. 1999) (quoting *Gallo v. City of Philadelphia*, 161 F.3d 217, 222 (3d Cir. 1998)))).  In addition, the First Circuit has stated that the trigger for a malicious prosecution claim under § 1983 is a seizure "*pursuant to legal process,*" which it has noted is generally "an arrest warrant" or "a subsequent charging document." *Nieves v. McSweeney*, 241 F.3d 46, 54 (1st Cir. 2001) (emphasis in original).

The legal basis for Mr. Sineni's claim of false imprisonment is more questionable, not because it cannot be subsumed under a § 1983 claim, but because his false imprisonment claims appear to be based on an allegation of "a falsely obtained arrest warrant." *Compl.* ¶ 19.  In *Harrington v. City of Nashua*, 610 F.3d 24 (1st Cir. 2010), the First Circuit, citing *Wallace v. Kato*, 549 U.S. 384, 389 (2007), described "a critical distinction between false imprisonment and malicious prosecution." *Harrington*, 610 F.3d at 29.  The *Harrington* Court explained that malicious prosecution, not false imprisonment, "remedies detention accompanied, not by absence of legal process, but by *wrongful institution* of legal process." *Id.* (quoting *Wallace*, 549 U.S. at 389) (emphasis in *Wallace*).  Even so, Mr. Sineni cited *Wallace* for the proposition that "[f]alse arrest and false imprisonment overlap; the former is a species of the latter . . . . We shall thus refer to the two torts together as false imprisonment." *Pl.'s Opp'n* at 14-15 (quoting *Wallace*, 549 U.S. at 388-89).

The parties did not discuss this issue in their memoranda and *Wallace* reveals some ambiguity as to the circumstances in which a plaintiff like Mr. Sineni could

proceed under his false imprisonment theory. Therefore, the Court is reluctant to rule on the motion for summary judgment on the false imprisonment claim based on a theory not advanced by the Sheriff's Office and not addressed by Mr. Sineni.

For purposes of this motion, the Court assumes that Mr. Sineni may in theory proceed under § 1983 on both malicious prosecution and false imprisonment bases. The Court turns to whether Mr. Sineni has put forward sufficient facts to withstand summary judgment.

### 2. Anthony Sineni's § 1983 Claims against the Sheriff's Office

As the Court sees it, Mr. Sineni is proceeding against the Sheriff's Office first under the premise that Detective Fournier improperly excluded from the affidavit in support of the arrest warrant in this case facts that would have suggested he was innocent of the charges for which he was being arrested.

In *Brady v. Dill*, 187 F.3d 104 (1st Cir. 1999), the First Circuit recognized that a law enforcement officer may not "treat evidence of innocence with impunity." *Id.* at 114. The *Brady* Court wrote that "a police officer may be liable if he fails to apprise the prosecutor or a judicial officer of known exculpatory information." *Id.* Thus, "when a police officer acts as an information provider, he may be obliged to reveal exculpatory facts (bearing either on innocence or on probable cause) . . . ." *Id.* "[T]he constitutional wrong results from the officer's failure to deliver material information to competent authorities." *Id.*

Here, the most troubling omission from the affidavit for the arrest warrant is the statement by the gun owner, Mark Rankin, that Mr. Sineni's possession would have been authorized and with his consent. After all, the warrant authorized Mr.

Sineni's arrest in part for receiving stolen property, a violation of 17-A M.R.S. § 359, which requires that the person who receives the stolen property retain it "with the intent to deprive the owner of the property." *Id.* § 359(1)(A). If the owner authorized Mr. Sineni's possession of the firearms, it is difficult to see how there would have been probable cause to believe he had committed that crime.

Moreover, in reviewing the affidavit in support of the arrest warrant, the stolen firearm allegation permeates the subsequent events. *Fournier Aff.* ¶¶ 2-26. Winona Hichborn first contacted Detective Fournier concerning the presence of stolen guns at her home, and Mr. Sineni's later alleged actions, including his statements to the police about Amer Radhi bringing the firearms to their home, his efforts to force Mr. Radhi to accept responsibility for illegal possession of the firearms, his threats to Ms. Hichborn and Mr. Radhi, and his assault of Ms. Hichborn, all stem from the stolen weapons charge. *Id.* Once Mr. Rankin's exonerating statements were made plain, the unrevealed issues affecting the credibility of Ms. Hichborn and Mr. Radhi might well have cast the remaining issues in a different light, causing the judge to balk at issuing the arrest warrant itself.

Mr. Sineni's next series of allegations runs against the actions of Detective Potvin. The string of connective evidence is dense. But Mr. Sineni essentially claims that Detective Potvin was in cahoots with Winona Hichborn to get him arrested and restrict his access to his children as part of a more generalized vendetta among Detective Potvin and the Victims' Advocates to leverage the justice system against

fathers like Mr. Sineni, who are accused of domestic violence.[25]  Mr. Sineni claims that Detective Potvin improperly coached Ms. Hichborn to make false accusations against him with a view toward ousting him from his home, securing Ms. Hichborn's custody rights to their children, and extracting financial support from him.  As part of this leverage, Mr. Sineni alleges that Detective Potvin intervened to force him to remain in jail unbailed for six to eight hours and to convince the assistant attorney general to demand a no contact provision with Mr. Sineni's children as a condition for being released.

To proceed under § 1983, a claimant must identify the constitutional right alleged to have been violated.  Here, as the United States Supreme Court held in *Manuel v. City of Joliet*, 137 S. Ct. 911 (2017), a person arrested based on allegedly fabricated information "may bring a claim based on the Fourth Amendment."  *Id.* at 914.  Mr. Sineni also claims that the Sheriff's Office deprived him of the liberty interest to be a parent to his own children.  In *Troxel v. Granville*, 530 U.S. 57 (2000), the United States Supreme Court described the "interest of parents in the care, custody, and control of their children" to be "perhaps the oldest of the fundamental liberty interests recognized by this Court."  *Id.* at 65; *Carter v. Lindgren*, 502 F.3d 26, 30 (1st Cir. 2007) ("In *Hatch* [*v. Dep't for Children, Youth & Their Families*, 274 F.3d 12, 20 (1st Cir. 2001)], this court held that the right to familiar integrity 'is plainly of constitutional dimension'").

---

[25]      Exactly whether and how Detective Potvin was supposedly connected with Detective Fournier's affidavit in support of the arrest warrant is unclear on this record.

### 3.    The Sheriff's Office's Policies and Procedure

As it now stands, Mr. Sineni's sole defendant is the Sheriff's Office.  In order to proceed under 42 U.S.C. § 1983 against a municipality, such as the Sheriff's Office, a plaintiff must establish that he suffered constitutional violations as a result of unconstitutional policies or customs of the municipality.  In *Monnell v. Department of Social Services*, 436 U.S. 658 (1978), the United States Supreme Court concluded that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  *Id.* at 694.  Under *Monnell*, a governmental entity is responsible under § 1983 only when the injury is inflicted by "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy. . . ."  *Id.*  Government entities includes counties.  *See McInnis v. Maine*, 638 F.3d 18, 22 n.4 (1st Cir. 2011).

Mr. Sineni's basis for claiming that the actions of Detectives Fournier and Potvin represented the execution of the Sheriff's policies or customs is remarkably thin.  The Sheriff himself denied any personal knowledge of the type of misconduct that Mr. Sineni alleged.  Mr. Sineni points to no written policy that he contends would violate constitutional rights.  To the contrary, the Sheriff's Office produced written policies that require its employees to abide by delineated standards in applying for search warrants and by a comprehensive Code of Conduct.  *See DSMF* Attach. 4 *Cumberland Cnty. Sheriff's Office Policy and Procedure, Search Warrants*, Attach. 5 *Cumberland Cnty. Sheriff's Office Standard Operating Procedure, Code of Conduct*.

The only evidence supporting Mr. Sineni on this narrow issue is his own assertion that he is personally aware of instances when County employees omitted

critical information or misrepresented information in affidavits to obtain search warrants and that he is personally aware of instances when County employees held inmates over and delayed releasing them from custody. There is also an insinuation that, in keeping with other cases, Detective Potvin conspired with members of the District Attorney's Victims' Advocates to extract a no contract condition to Mr. Sineni's bail.

But these general allegations are singularly lacking in specifics. Mr. Sineni failed to specifically identify any of these incidents, leaving the Court only with a blanket assertion of impropriety. The Court concludes that without more, these assertions represent "conclusory allegations, improbable inferences, and unsupported speculation" that the First Circuit warned trial judges not to accept during motions for summary judgment. *Cortés-Rivera*, 626 F.3d at 26.

In sum, whatever claim Mr. Sineni may have against others, the summary judgment record in this case fails to establish a genuine issue of material fact as to whether the Sheriff's Office violated his civil rights under 42 U.S.C. § 1983 in the events leading up to his arrest, detention, and subsequent prosecution in the fall of 2014.

### D.    THE MOTION TO DISMISS

Under Rule 41(a)(2), "dismissal without prejudice is the norm, 'unless the court finds that the defendant will suffer legal prejudice.'" *Cabrera v. Esso Std. Oil. P.R.*, 723 F.3d 82, 88 (1st Cir. 2013) (quoting *P.R. Maritime Shipping Auth. v. Leith*, 668 F.2d 46, 50 (1st Cir. 1981)). "The mere prospect of a second lawsuit does not

constitute such prejudice." *Id.* (citing *Doe v. Urohealth Sys., Inc.*, 216 F.3d 157, 160

(1st Cir. 2000)). The First Circuit wrote in *Cabrera*:

> Voluntary dismissal under Rule 41(a)(2) is conditioned on court permission to protect the nonmovant from unfair treatment. Such unfairness can take numerous forms, including the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation of the need to take a dismissal, and the fact that a motion for summary judgment has been filed by the defendant. For example, it is appropriate to consider whether a party proposes to dismiss the case at a late stage of pretrial proceedings, or seeks to avoid an imminent adverse ruling. A plaintiff should not be permitted to force a defendant to incur substantial costs in litigating an action, and then simply dismiss his own case and compel the defendant to litigate a wholly new proceeding.

*Id.* (internal quotations and citations omitted). "Where, as here, a defendant has

answered the complaint or moved for summary judgment, a plaintiff cannot

unilaterally dismiss an action without court approval 'on terms that the court

considers proper.'" *Sineni v. Estabrook*, No. 2:15-cv-00368-JAW, 2016 U.S. Dist.

LEXIS 176373 (D. Me. Dec. 21, 2016) (quoting *JRA Architects & Project Managers,*

*P.S.C. v. First Financial Group, Inc.*, 375 F. App'x 42, 42 (1st Cir. 2010) (quoting FED.

R. CIV. P. 41(a)(2)).

In this case, Mr. Sineni filed his Complaint with the Cumberland County

Superior Court on September 27, 2016. *State Court Record* Attach. 2, *Docket Record*

(ECF No. 3). The lawsuit has therefore been pending for more than a year and a half.

The Court issued a Scheduling Order on October 20, 2016, setting a discovery

deadline of March 8, 2017 and a due date for dispositive motions of March 29, 2017.

*Scheduling Order* at 2-3 (ECF No. 6). As is evident from the attachments to the

Defendant's and Plaintiff's summary judgment filings, the parties engaged in

discovery, and the Sheriff's Office's motion for summary judgment has been fully briefed. It is apparent that the parties have spent time, money and effort to bring the case to this point. *See Pl.'s Opp'n* at 19 ("Plaintiff has incurred burdensome and unnecessary costs and spent copious amounts of time on discovery"); *Def's Reply* at 8 ("The Defendant has already expended the effort and expense of discovery and preparation of the Motion for Summary Judgment").

In reviewing Mr. Sineni's motion for dismissal without prejudice, it appears that he is not technically pressing the motion to dismiss. In his motion, he expressly states that the case should be dismissed without prejudice "if the court takes the position that the defendant is correct on the MTCA notice requirements issue" and explains that the dismissal should be granted "due to laches and unreasonable delay which has prejudiced the Plaintiff. . . ." *Pl.'s Opp'n* at 19. However the Court has not ruled that the MTCA notice requirement bars the claim and therefore the Court views the request for voluntary dismissal without prejudice to have been withdrawn.

If the Court is not correct, in these circumstances, it appears that by filing his motion for voluntary dismissal, Mr. Sineni is seeking to avoid "an imminent adverse ruling." *Cabrera*, 723 F.3d at 88. Accordingly, the Court declines to allow Mr. Sineni to hedge his bet on this litigation by requesting a dismissal only if the Court is inclined to rule against him on the motion for summary judgment.

## VII. CONCLUSION

The Court GRANTS the Cumberland County Sheriff's Office's Motion for Summary Judgment (ECF No. 55) and the Court directs the Clerk to enter judgment for the Cumberland County Sheriff's Office and against Anthony J. Sineni, III. The

Court DENIES Anthony J. Sineni, III's Motion for Voluntary Dismissal without prejudice (ECF No. 60).

SO ORDERED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 8th day of May, 2018